NOT FOR PUBLICATION (Document No. 14)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| BRIAN ALLAN ROSCOE, | |
| Plaintiff, | Civil No. 10-1043 (RBK/AMD) |
| v. | OPINION |
| P.O.W. NETWORK, CHARLES SCHANTAG and MARY SCHANTAG, | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on a motion by Defendants P.O.W. Network, Charles Schantag and Mary Schantag (collectively "Defendants") to dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The Complaint brings state law claims for defamation and invasion of privacy.[1] For the reasons expressed below, the Court will grant Defendants' motion to dismiss.

**I. BACKGROUND**

P.O.W. Network is a nonprofit Missouri corporation with its sole place of business

---

[1] Plaintiff also made a motion for sanctions pursuant to Fed. R. Civ. P. 11. However, Plaintiff moved for Rule 11 sanctions in his brief in opposition to Defendants' motion to dismiss. Rule 11 requires a Plaintiff to file a motion for sanctions "separately from any other motion . . . ." Fed. R. Civ. P. 11(c)(1); Mason v. Therics, Inc., No. 08-2404, 2010 WL 147882, at *1 n.1 (D.N.J. Jan 12, 2010); Spring Creek Holding Co. v. Keith, No. 02-376, 2006 WL 2715148, at *3 (D.N.J. Sept. 22, 2006). Therefore, because Plaintiff did not file a motion for sanctions separate from his brief in opposition to Defendants' motion to dismiss, this Court will deny Plaintiff's motion.

1

located in Missouri. Charles and Mary Schantag are citizens and residents of Missouri. The Schantags are the founders, owners and operators of the P.O.W. Network.

The P.O.W. Network operates a website called www.pownetwork.org. The Second Amended Complaint ("Complaint") alleges that the Schantags "have complete control over the content of [the] website," and that the P.O.W. Network "functions as the alter ego of the Schantags." (Second Am. Compl. 3.) The website publishes information about prisoners of war, soldiers classified as missing in action, and other information concerning the careers of active duty, reserve component, and retired military servicemembers. The website's homepage proclaims that the site is "dedicated to information distribution on our Prisoners of War and Missing in Action Servicemen." (Second Am. Compl. Ex. 4.) The website is also interactive; it allows users to send the P.O.W. Network relevant information for use on the website. In addition to providing the lay public with information about servicemembers, the website offers for sale certain products, including commemorative coins, posters, T-shirts, and books. The website also solicits financial support for the P.O.W. Network. The website receives approximately 109,000 to 145,000 visitors each week.

The Complaint does not allege that the Schantags or the P.O.W. Network entered into any contracts with citizens of New Jersey, traveled to New Jersey, or otherwise conducted any commercial activity with any person or entity in New Jersey. Furthermore, the Complaint does not allege that the Schantags have contact with the State of New Jersey, or any other state, other than through the information made generally available on www.pownetwork.org.

Bryan Allan Roscoe ("Plaintiff") is a resident of New Jersey and a military veteran. Plaintiff alleges that he served in the United States Navy, the United States Army, and the New

Jersey National Guard during the "Viet Nam[sic] War Era." (Second Am. Compl. 2.) Plaintiff further alleges that he received an Honorable Discharge from his service as a result of a medical condition.

Plaintiff alleges that between the period of December 2007 and July 2009, the Schantags posted defamatory information on their website concerning his military service. In particular, Plaintiff alleges that the P.O.W. Network website informs viewers that he "[h]as been seen wearing [a] PH, (Purple Heart) Combat patch . . . ." (Second Am. Compl. 4.) (internal quotations omitted). This information is located at the following uniform resource locator ("url"): <http://www.pownetwork.org/phonies/phonies1258.htm>. Plaintiff alleges that the aforementioned statement appears in a lavender background which informs the reader that he is "eligible for (Federal) prosecution under the STOLEN VALOR ACT signed into law Dec 20, 2006 or U.S. Code Title 18." (Second Am. Compl. 4.) Plaintiff also claims that the Schantags specifically directed these statements towards New Jersey citizens "to invoke [a] reaction by New Jersey citizens and organizations against [him] . . . ." (Second Am. Compl. 4.)

## II.     STANDARD

Generally, "once the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). However, where the court chooses not to conduct an evidentiary hearing, the plaintiff need only demonstrate a prima facie case of jurisdiction to defeat a motion to dismiss. See id. at 142 n.1 (citing Marine Midland Bank v. Miller, 664 F.2d 899, 904 (2d Cir. 1981); LaRose v. Sponco Mfg., Inc., 712 F. Supp. 455, 458-59 (D.N.J. 1989)). Thus, the Court "must accept all of the

3

plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Id.

To exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry. IMO Indus., Inc. v. Kierkert, AG, 155 F.3d 254, 259 (3d Cir. 1998). First, the court must apply the relevant state's long-arm statute to see if it permits the exercise of personal jurisdiction. Id.; see Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) ("[A] federal district court may assert jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state.") (quoting Fed. R. Civ. P. 4(k)). Second, the court must apply the principles of due process. IMO Indus., Inc., 155 F.3d at 259. In New Jersey, this inquiry is conflated into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest extent permissible under the Due Process Clause. Id.; see Carteret Sav. Bank, FA, 954 F.2d at 145 (citing N.J. Court R. 4:4-4(c)) ("The New Jersey long-arm rule extends to the limits of the Fourteenth Amendment Due Process protection.").

Due process permits the exercise of personal jurisdiction over a nonresident defendant where the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987) (internal citations and quotations omitted). A plaintiff may establish personal jurisdiction by proving the existence of either general or specific jurisdiction. Id. To establish general jurisdiction, the plaintiff must "show significantly more than mere minimum contacts," and that the defendant's forum contacts are "continuous and substantial." Id. (citing Gehling v. St. George's Sch. of Med., Ltd., 773 F.2d 539, 541 (3d Cir. 1985); Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am., 651 F.2d 877

(3d Cir. 1981)).

On the other hand, establishing traditional specific jurisdiction involves a three-part inquiry. Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007). First, "the defendant must have purposefully directed his activities at the forum." Id. (internal quotation marks omitted). Second, the plaintiff's claim must "'arise out of or relate to' at least one of those specific activities." Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). Third, courts may consider "additional factors to ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice." Id. (internal quotations and modification removed).

Whether a state may exercise personal jurisdiction over an out-of-state defendant website owner depends on "the nature and quality of commercial activity that the entity conducts over the Internet." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 453 (3d Cir. 2003); Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). The Third Circuit employs the Zippo sliding scale to assess the "nature and quality" of the commercial activity a company conducts over the Internet. Spuglio v. Cabaret Lounge, 344 Fed. App'x 724, 725 (3d Cir. 2009). At one end of the scale lies an "active" defendant who "clearly does business over the Internet." Zippo, 952 F. Supp. at 1124. The exercise of personal jurisdiction over "active" defendants is proper. Id. At the other end of the scale are defendants who "simply post[] information on an Internet Web site [that] is accessible to users in foreign jurisdictions." Id. These "passive" users "do[] little more than make information available to those who are interested in it." Id. It is improper to exercise personal jurisdiction over "passive" defendants. Id. In the middle are "interactive" websites which enable a user to "exchange information with

[a] host computer." Id.  When assessing "interactive" sites, the "exercise of jurisdiction is determined by examining the level of interactivity and [the] commercial nature of the exchange of information that occurs on the Web site."  Id.

Active websites that enable viewers to purchase merchandise "make the exercise of jurisdiction proper because they involve an entity that intentionally reaches beyond its boundaries to conduct business with foreign residents."  Food Sci. Corp. v. Nagler, No. 09-1798, 2010 WL 1186203, at *2 (D.N.J. Mar. 22, 2010) (citing Zippo, 952 F. Supp. at 1124) (emphasis added).  Thus, "[m]ere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world.  Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts."  Toys "R" Us, Inc., 318 F.3d at 454.

### III.   DISCUSSION

Defendants challenge this Court's jurisdiction on several substantive fronts.  First, Defendants argue that because the P.O.W. Network is a nonprofit organization, which "does not benefit from the State of New Jersey in the same way that a for-profit entity would," it lacks sufficient contacts with this jurisdiction.  (Notice of Mot. to Dismiss Pl.'s Second Am. Compl. for Lack of Personal Jurisdiction 4.)  Second, Defendants assert that it is burdensome for a nonprofit organization that conducts all of its business in a foreign state to travel to New Jersey to litigate a case when it "has all of its records within the State of Missouri and the two individual named Defendants reside in the State of Missouri."  (Notice of Mot. to Dismiss Pl.'s Second Am. Compl. for Lack of Personal Jurisdiction 6.)  Finally, Defendants argue that they

6

merely engage in "fortuitous interaction with one or more residents" of New Jersey by means of the products they sell on their website www.pownetwork.org. (Notice of Mot. to Dismiss Pl.'s Second Am. Compl. for Lack of Personal Jurisdiction 4.)

Plaintiff argues that this Court has personal jurisdiction over his claim because: (1) Defendants attempted to humiliate him with their allegedly defamatory statements in his home community in New Jersey; (2) Defendants admit that they sell products through the Internet in New Jersey; and (3) Defendants specifically targeted the allegedly defamatory information to citizens and organizations in New Jersey.

### A.     Specific Jurisdiction

In this case, Defendants' website contains both "passive" and "active" elements. The passive portion of the website consists of general information about "Prisoners of War, soldiers classified as 'Missing in Action,' and other information about the military careers of various individuals." (Second Am. Compl. 2.) Because this portion of the website is passive, it does not provide a basis for this Court's jurisdiction. However, the website also has an "active" portion, which consists of solicitations for donations and the sale of merchandise. This is the portion of the website that provides a potential basis for personal jurisdiction over Defendants.[2]

---

[2] As previously mentioned, in order for a court to exercise specific jurisdiction over a defendant's out-of-state activities, the plaintiff's claim must "'arise out of or relate to' at least one of those specific activities." Id. (quoting Helicopteros, 466 U.S. at 414). Plaintiff alleges that Defendants' commercial activities on their website "relate to" the informational portion of the website because a "[m]ajor part of what propels [Defendants'] sales includes their tortious [a]buse and [c]onduct of [d]efamation against . . . Plaintiff," and "Defendants improperly use and abuse the Name, Person and Reputation of [Plaintiff], and do in fact, seek actual monetary gain in the due course of their [d]efamation, inside the state of New Jersey." (Pl. Bryan Roscoe's Opp'n to Def.'s Mot. to Dismiss 9.) Thus, Plaintiff argues that the commercial conduct on Defendants' website is related to the "passive" conduct on Defendants' website. However, even assuming that the website is "active," Plaintiff must prove that Defendants "'purposefully availed' [themselves] of conducting activity" in New Jersey. Toys "R" Us, 318 F.3d at 454. For the reasons expressed below, Plaintiff cannot prove that Defendants' commercial activity is purposely directed towards New Jersey.

Applying the framework created in Zippo, and further refined in Toys "R" Us, Plaintiff fails to satisfy its burden of proving that Defendants "purposefully availed" themselves of conducting activity in New Jersey based on their Internet-related activities.  Based on the allegations in the Complaint, Defendants' sole contact with New Jersey stems from the potential sale of merchandise on its website to New Jersey citizens.  Although Plaintiff alleges that its website "is more than just a poster of information on the Internet; it operates as an interactive website,"  (Second Am. Compl. 2.), and that its website  "solicits visitors to support P.O.W. Network financially,"  (Second Am. Compl. 2.), the Third Circuit has held that mere solicitations for contributions and advertisements do not constitute intentional conduct towards a forum state.  See Remick v. Manfredy, 238 F.3d 248, 259 (3d Cir. 2001) ("The facts in this case do not require that we consider the current debate as to which fora have jurisdiction over a defendant who seeks to use its website for the solicitation of or transaction of business.  The District Court summarized its view of the law in the area, in which it had concluded that the mere posting of information or advertisements on an internet website does not confer nationwide personal jurisdiction.  We do not disagree.").  Hence, the Court must determine whether Plaintiff's allegation that the P.O.W. Network website "has offered for sale various products, including books, commemorative coins, posters and T-shirts," (Second Am. Compl. 2.), justifies this Court's exercise of personal jurisdiction over this dispute.

The Complaint does not allege that Defendants specifically targeted any of their merchandise to New Jersey.  In fact, the Complaint merely alleges that the P.O.W. Network "has offered for sale various products, including books, commemorative coins, Posters and T-shirts," and that "its website receives 109,000 - 145,000 visitors each week." (Second Am. Compl. 2.)

8

Although these allegations demonstrate that Defendants offered their products for sale <u>generally</u>, they do not suggest that Defendants specifically directed their merchandise towards the citizens of New Jersey.

Moreover, the Complaint does not allege that Defendants <u>knowingly</u> conducted any business with citizens of New Jersey through their website. Although this Court recognizes that Defendants' website provided a forum through which citizens of New Jersey and any other state could upload information and make donations to the P.O.W. Network, Plaintiff does not allege that Defendants knew or had reason to know that any citizens of New Jersey actually accessed Defendants' website and made donations, uploaded information, or purchased any of Defendants' products. Specifically, Plaintiff does not allege that Defendants processed any orders for citizens of New Jersey, received any donations from citizens of New Jersey, or otherwise conducted any business with citizens of New Jersey. The facts in the Complaint demonstrate that the website made Defendants' products available generally to citizens nationwide, but do not suggest that Defendants had knowledge of any specific business transaction with a citizen of New Jersey. Therefore, the allegations in the Complaint do not prove that Defendants knowingly conducted business with citizens of New Jersey.

Finally, Plaintiff does not allege that Defendants had any other non-Internet contacts with New Jersey. In the Third Circuit, a court may "consider the defendant's related non-Internet activities as part of the 'purposeful availment' calculus." <u>Toys "R" Us, Inc.</u>, 318 F.3d at 453. To conduct this inquiry, a court may consider non-Internet contacts such as "serial business trips to the forum state, telephone and fax communications directed to the forum state, purchase contracts with the forum state, purchase contracts with forum state residents, contracts that apply

the law of the forum state, and advertisements in local newspapers . . . ." Id.; see also Barrett v. Catacombs Press, 44 F. Supp. 2d 717, 726 (E.D. Pa. 1999) ("[C]ourts have held that personal jurisdiction may be exercised over a Defendant when contacts with the forum are something 'more' than via a Web site."). The Complaint contains no allegations that Defendants took any trips to New Jersey, made any telephone calls or fax communications to citizens of New Jersey, entered into any contracts that apply New Jersey law, or advertised in any local newspapers or periodicals in New Jersey. In effect, Defendants' sole connection to New Jersey is through its website.

Therefore, because Plaintiff fails to allege that Defendants purposely availed themselves of conducting activity in New Jersey, this Court cannot exercise specific jurisdiction over this dispute. Although the Complaint alleges that Defendants offered for sale merchandise and solicited donations nationwide through its website, there is no evidence that Defendants specifically directed any of their commercial activities to citizens of New Jersey.

### B.      General Jurisdiction

This Court does not have a basis for exercising general jurisdiction over Plaintiff's claim for the same reasons that it cannot exercise specific jurisdiction over Plaintiff's claim. In order to establish general jurisdiction, the plaintiff must show that the defendant has "significantly more than mere minimum contacts" with the forum state and that the defendant's forum contacts are "continuous and substantial." Provident Nat. Bank, 819 F.2d at 437 (citing Gehling, 773 F.2d at 541). In most cases, courts in this Circuit, and others, apply the Zippo framework to determine whether they have specific jurisdiction over a plaintiff's claim. See Toys "R" Us, 318 F.3d at 452-54 (applying Zippo framework to determine whether court had specific jurisdiction over the

plaintiff's trademark infringement claim); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997) (same); Food Sciences Corp., 2010 WL 1186203, at *2 (trademark infringement and false designation claims, and related state law claims); L'Athene, Inc. v. EarthSpring LLC, 570 F. Supp. 2d 588 (D. Del. 2008) (trademark infringement, unfair competition, and common law infringement claims); Zippo, 952 F. Supp. 1119 (trademark dilution, infringement, and false designation claims under Lanham Act and related state law claims). A court may also apply the Zippo framework in cases where the plaintiff asserts general jurisdiction. See Desktop Tech., Inc., Colorworks Reprod. & Design, Inc., No. 98-5029, 1999 WL 98572, at *2-4 (E.D. Pa. Feb. 25, 1999) (applying Zippo framework to determine whether court could exercise general jurisdiction); Molnlycke Health Care AB v. Dumex Med. Surgical Prod., 64 F. Supp. 2d 448, 459 (E.D. Pa. 1999) ("While plaintiff correctly acknowledges that most of the cases applying this framework have looked to specific jurisdiction, the court agrees that it may also properly be used in cases asserting general jurisdiction.").

   This Court cannot exercise general jurisdiction over Plaintiff's claims for the same reasons that it cannot exercise specific jurisdiction over Plaintiff's claims. As previously mentioned, Plaintiff has not alleged that Defendants purposefully directed any of their sales or business towards the citizens of New Jersey. Furthermore, Plaintiff has not alleged that Defendants engaged in any non-Internet activities with New Jersey. Accordingly, there is no evidence that Plaintiff had any "continuous and substantial" contacts with New Jersey. Therefore, this Court has no basis for exercising general jurisdiction over Plaintiff's defamation claim.

  **C.**  **Traditional Notions of Fair Play and Substantial Justice**

Because this Court does not have personal jurisdiction over Plaintiff's claims, this Court need not address whether exercising personal jurisdiction over Plaintiff's claims would "comport with fair play and substantial justice." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)).

IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. An appropriate Order shall follow.


Date: 9/30/2010                                          /s/ Robert B. Kugler
                                                         ROBERT B. KUGLER
                                                         United States District Judge